POCAHONTAS COAL & COKE COMPANY *v.* BY-PRODUCTS POCAHONTAS COMPANY *et al.*

(No. 7185)

Submitted May 24, 1932. Decided May 31, 1932.

*James S. Kahle* and *John Kee*, for appellants.
*Joseph M. Crockett, A. W. Reynolds,* and *F. M. Rivinus,* for appellee.

MAXWELL, JUDGE:

This suit involves the right of a trustee under a deed of trust executed by a lessee to remove from a coal mining property certain improvements and equipment used in the dumping, grading, cleaning, screening and loading of coal. If these articles are a part of the realty, fixtures, the circuit court was right in enjoining their removal, otherwise the injunction was not warranted.

Coal leases were executed by the plaintiff to Cirrus Coal & Coke Company and Kimball-Pocahontas Coal Company May 15, 1908, and May 1, 1912, respectively. The defendant, By-Products Pocahontas Company, became assignee of the leases August 24, 1920. The said defendant actively operated the properties for the production of coal for nearly ten years.

By deed of trust of January 1, 1930, the By-Products Pocahontas Company conveyed to Jarius Collins, Jr., trustee, the said leaseholds, with improvements, machinery and equipment thereon to secure the said Kimball-Pocahontas Coal Company in the payment of certain promissory notes aggregating about $108,000. On the 24th of April, 1930, the Pocahontas By-Products Company having defaulted in the payment of royalties, plaintiff declared a forfeiture of the leaseholds and reentered and took possession of the properties. The lessor formally assented to the assignments but the record does not disclose that it assented to the deed of trust.

The latter part of May, 1930, Collins, trustee, entered the properties and removed therefrom numerous articles of equipment, claiming that they were embraced in the deed of trust. The plaintiff then instituted this suit to enjoin further removal and to require the return of articles taken away. The plaintiff's position is that upon forfeiture of the leases the improvements became the property of the lessor. A temporary injunction was entered June 2, 1930. There was no appearance for the defendants. On bill taken for confessed the injunction was made permanent September 8, 1930.

This last order not only enjoined the removal of any other equipment but commanded the return of that which had been removed.

Collins died and in his stead Richard H. Kelley was appointed trustee December 1, 1930. At the March term, 1931, the circuit court overruled a motion of the defendants, Kimball-Pocahontas Coal Company and Kelley, trustee, to reverse and set aside the decree of September 8, 1930, for errors apparent on the face of the record. In June, 1931, a hearing was held upon a rule charging Kelley, trustee, with contempt of court in his failure to return to the leaseholds the tipple equipment which Collins, trustee, had removed. The court, finding that its mandatory injunction of September 8, 1930, had not been complied with, entered an order requiring Kelley to return the items which had been removed. This order specifically enumerates the said articles.

From these two decrees, the one of March term, 1931, (exact date of entry not given) and the other of June 25, 1931, the defendants appeal.

The ground of the motion to set aside and vacate the decree of September 8, 1930, was that the said decree and all the papers in the cause are so indefinite and uncertain in their attempted descriptions of the equipment involved that the defendants cannot know therefrom what articles are specified by the said decree. The defendants, appellants, take the position that by reason of said alleged indefiniteness and lack of sufficient description there was error on the face of the record, and that by reason thereof the said decree should have been reversed and set aside.

The decree of September 8, 1930, enjoined the defendants and their agents:

> "from further removing, appropriating, concealing, making sale of or otherwise disposing of the property heretofore removed by them from the leased premises refered to in the bill, being parts of the improvements claimed by the plaintiff upon the said leased premises, and from removing, appropriating, concealing, making sale of or otherwise disposing of the property claimed by the plaintiff as being im-

provements upon the said leasehold premises or· any part thereof. And it is further adjudged, ordered and decreed that the defendants shall return those parts of the improvements claimed by the plaintiff which have been removed by the defendants from the leased premises described in the bill, to the plaintiff upon said leased premises.''

In the bill it is alleged that on the 31st of May, 1930, Collins, trustee, entered upon the said leasehold premises and

''began moving from the said premises, certain fixtures constituting parts of the improvements upon the said leaseholds, to-wit: certain mine pumps and portions of the machinery which were fixtures and parts of the coal tipple upon the said leased premises, and is now continuing the said trespass and removal of other parts, fixtures and permanent attachments of the said tipple and has declared his intention to remove and appropriate all of the machinery and equipment constituting part of the said improvements upon the said leaseholds and permanent fixtures attached to and part of the structures necessary in the conduct of mining coal from the said leasehold premises, and everything in the buildings and improvements upon the said leasehold that is attached by bolts.''

The prayer of the bill is that the defendants be enjoined from further removal of improvements from said leasehold and that they be required to return thereunto

''the fixtures, attachments, machinery and implements upon the said leasehold premises which are claimed by the plaintiff as parts of the improvements thereon * * *.''

It will be noted from the above excerpt from the bill that the articles asserted by· the plaintiff to have been unlawfully removed were ''certain fixtures, constituting parts of the improvements upon the said leasehold, to-wit: certain mine pumps and portions of the machinery which were fixtures and parts of the coal tipple upon the said leased pre-

mises  *  *  *.''  Just two classes of property are there mentioned: first, mine pumps, and second, portions of the machinery which were fixtures and parts of the tipple. The plaintiff's claim to the mine pumps has been abandoned.

Reading together the allegations of the bill, the prayer of the bill, and the permanent order of September 8, 1930, is there indefiniteness and uncertainty as to the articles mentioned, other than pumps? We think not. The effect of the injunction was to require the defendants to return to the leaseholds the portion of the tipple equipment which had been removed. No uncertainty.

These articles are asserted by the plaintiff to be fixtures. Are they such? They consist, among other things, of belt drives, steel chute, switch boxes, steel pulleys and gear assemblage, shaker screen drives, loading booms, and loading boom drives. It is in evidence that the machinery and appliances described were designed to fit into this tipple, secured therein by means of bolts and other fastenings, and that the general purpose of the tipple and its equipment was to prepare coal for market.

''Machinery and like appliances used in connection with real estate become irremovable fixtures when the following conditions concur: first, such property must in some way be attached to the real estate, second, it must be adapted to the use being made of that part of the real estate to which it is attached; and third, it must be the intention of the party placing such property upon the real estate to make it a permanent accession to the freehold.'' *Snuffer* v. *Spangler*, 79 W. Va. 628, 92 S. E. 106. In the Virginia case of *Green* v. *Phillips*, 26 Gratt. 252, the court, after stating the rule substantially as above proceeds: ''But the general course of modern decision, both in England and in the American courts, is against adopting, as the criterion for determining the character of chattels as fixtures, whether the annexation to the realty be slight and temporary, or immovable and permanent, and in favor of declaraing everything a fixture which has been attached to the realty with a view to the purposes

for which it is held or employed, however slight or temporary the connection between them.''

In determining the intention of the parties as to whether articles attached to the freehold becomes fixtures, consideration should be given to the circumstances and purposes of the annexation. *Hagan* v. *Trust Co.,* (Va.) 139 S. E. 317. Authorities there cited. Considering the instant case from that angle, it is to be noted first that the By-Products Pocahontas Company operated under leases (Cirrus Coal & Coke Company lease of 1908 and Kimball-Pocahontas Coal Company lease of 1912, both already mentioned) each for a term of thirty years with the privilege in the lessee of renewal for a like term. Then we find that under the provisions of Article 29 of each lease the lessee, in event of termination of the lease other than by forfeiture, may remove improvements placed upon the property, if the lessor does not desire to take over the same at an appraised value. No provision is made for the removal of improvements by the lessee in event of termination of the lease by forfeiture. There arises from these provisions the necessary implication that if the lease be forfeited the lessee would have no further rights in the improvements. This was in the nature of a penalty for breach of conditions of the lease by the lessee. On the other hand, if the term of the lease were fulfilled or if it were terminated by agreement between the parties, the lessee might remove the improvements if the lessor did not desire to purchase them upon appraisal.

The long term of the leases militates against the present contention of the corporate defendant that it, as remote assignee of the lessee, has the right to remove the improvements from the property. It is not to be presumed that improvements installed in contemplation of such a long term as is provided for in the leases, were installed under any other intention than that of permanency. They must be deemed to have been for the purpose of full development of the property. But the said provisions of Article 29 of the leases are conclusive—no removal after forfeiture.

We therefore affirm the decree of March term, 1931, overruling motion to vacate the decree of September 8, 1930. We also affirm the final decree of June 25, 1931.

*Affirmed.*